1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
9

10   SARESA MCGUIRE,

11                           Plaintiff,                    CASE NO. 14-cv-05250 JRC

12           v.                                            ORDER ON PLAINTIFF'S
                                                           COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15
                             Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. No. 5; Consent to Proceed Before a United

20   States Magistrate Judge, Dkt. No. 6). This matter has been fully briefed (*see* Dkt. Nos.

21   12, 15, 16).

22
            After considering and reviewing the record, the Court finds that the ALJ properly
23
     concluded that plaintiff's diabetes was not a severe impairment because the medical
24

ORDER ON PLAINTIFF'S COMPLAINT - 1

evidence did not corroborate plaintiff's claims of difficulty using her hands.  The ALJ

also properly concluded that the medical evidence did not include all of the findings

necessary to determine that the severity of plaintiff's impairments required a per se

finding of disability.  Finally, the ALJ properly rejected the medical opinion of plaintiff's

chiropractor Gordon Rody, DC, that plaintiff could not be in any one position "very long"

because it was not sufficiently specific.

<u>BACKGROUND</u>

Plaintiff, SARESA MCGUIRE, was born in 1974, and was 35 years old on the

alleged date of disability onset of May 25, 2010 (*see* Tr. 157-165).  Plaintiff has her GED

and is certified as a network support technician (Tr. 50-51).  Plaintiff last worked in 2007

or 2008 doing maintenance work in a work-study position (Tr. 53).  This job ended when

plaintiff completed her network support training (Tr. 54).

According to the ALJ, plaintiff has at least the severe impairments of "right knee

degenerative joint disorder and osteoarthritis, lumbar spine degenerative disc disease,

obesity, and panic disorder (20 CFR 416.920(c))" (Tr. 27).

At the time of the hearing, plaintiff was living with her disabled mother, and her

19-year-old disabled daughter (Tr. 48-49).

<u>PROCEDURAL HISTORY</u>

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant

to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and

following reconsideration (*see* Tr. 70-77, 78-91). Plaintiff's requested hearing was held

before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on July 25, 2012 (*see*

Tr. 43-69). On November 13, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.22-42).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Did the Commissioner err in failing to find that plaintiff's diabetes is a severe impairment; (2) Did the Commissioner err in determining that plaintiff did not meet or equal any of the listed impairments; (3) Did the Commissioner err in determining that plaintiff had a residual functional capacity to perform light level work; (4) Did the Commissioner err in determining plaintiff's credibility; and (5) Did the Commissioner err in not giving proper weight to the medical evidence (*see* Dkt. No. 12, p. 2).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

(1)     Did the Commissioner err in failing to find that plaintiff's diabetes is a severe impairment?

Plaintiff argues that the ALJ erred by finding her diabetes not severe at step-two of the sequential disability evaluation process.  Dkt. No. 12, pp. 5-6.  Step-two of the sequential evaluation process requires the ALJ to determine if the claimant "has a

medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d

1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii) (1996).  An impairment is "not severe" if it does not "significantly

limit" the ability to perform basic work activities.  20 C.F.R. § 416.921(a).

      Here, the ALJ resolved step-two in plaintiff's favor, finding that plaintiff's right

knee degenerative joint disorder, right knee osteoarthritis, lumbar spine degenerative disc

disease, obesity, and panic disorder are severe impairments.  Although the ALJ must take

into account a claimant's pain and other symptoms at step-two of the disability evaluation

process (*see* 20 C.F.R. § 416.929), the severity determination, however, is made solely on

the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful
> evaluation of the medical findings which describe the impairment(s) and an
> informed judgment about its (their) limiting effects on the individual's
> physical and mental ability(ies) to perform basic work activities; thus, an
> assessment of function is inherent in the medical evaluation process itself.
> <u>At the second step of sequential evaluation, then, medical evidence alone is
> evaluated in order to assess the effects of the impairment(s) on ability to do
> basic work activities.</u>  If this assessment shows the individual to have the
> physical and mental ability(ies) necessary to perform such activities, no
> evaluation of past work (or of age, education, work experience) is needed.
> Rather, it is reasonable to conclude, based on the minimal impact of the
> impairment(s), that the individual is capable of engaging in SGA.

Social Security Ruling ("SSR") 85-28, 1985 WL 56856 *4.

      Here, the ALJ determined that plaintiff's diabetes was not severe because the

medical evidence indicated it was well controlled by medications (Tr. 28 (*citing* Tr. 396

(no acute issues, medication well tolerated, no side effects), Tr. 432 (diary shows normal

morning and evening blood sugars, diabetes well controlled), Tr. 800 (diabetes stable)).

Although plaintiff testified that she had difficulty using her hands related to diabetic neuropathy, the ALJ noted that "a thorough review of the evidence reveals no significant findings to corroborate such claims." (Tr. 28.)  Nor does plaintiff point to any medical evidence in the record to support her allegations of diabetic neuropathy, handling difficulties, or any other functional limitations arising from diabetes.  Because the medical evidence does not show that plaintiff's diabetes caused more than a minimal limitation in her ability to perform basic work activities, the ALJ correctly determined that it was not severe. *See* 20 C.F.R. § 416.921(a).

> (2)     Did the Commissioner err in determining that plaintiff did not meet or equal any of the listed impairments?

Plaintiff next argues that the ALJ erred in finding that plaintiff's impairments, singularly and in combination, did not meet or medically equal the criteria of a listed impairment.  Dkt. No. 12, pp. 6-7.  Specifically, plaintiff argues that the ALJ inaccurately cited medical evidence regarding negative straight leg raise test findings.  Plaintiff further argues that the "ALJ also notes that there is no evidence of a worsening of [plaintiff's] condition, but this finding is inaccurate."  Dkt. No. 12, p. 7 (*citing* Tr. 32-33).

At step-three of the sequential disability evaluation process, the claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment."

SSR 83-19, 1983 WL 31248 *2.  Here, however, plaintiff fails to point to medical evidence that could support a finding of disability at step-three.

Similarly, plaintiff has not offered any theory, either in her briefing or during the administrative hearing, in an effort to establish medical equivalence to a listed impairment.  "A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett,* 180 F.3d at 1100 (*citing* 20 C.F.R. § 404.1526).  The ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683.  For these reasons, plaintiff has failed to demonstrate that her impairments meet or medically equal the severity of a listed impairment.

Additionally, plaintiff fails to point to any errors in the ALJ's assessment of the medical evidence that would impact the ultimate non disability finding in her case.  *See Molina v. Astrue*, 674 F.3d 1104, 1117-22 (9th Cir. 2012) (the Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability); *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).  First, with regard to the evidence concerning straight leg raise testing, plaintiff takes issue with what appears to be a scrivener's error in the ALJ decision.  Dkt. No. 12, pp. 6-7.  In summarizing the medical evidence from a December 2010 emergency room visit, the ALJ cites to Exhibit 4F, pages 48-52 (Tr. 32-33, 384-88).  As plaintiff points out, however, the reports from the December 2010 visit are not contained in Exhibit 4F.  Rather, the reports described by the ALJ are contained in Exhibit 5F, pages

1   48-52 (*compare* Tr. 32-33 *with* Tr. 647-51).  Consistent with the ALJ's summary of this

2   evidence, the December 2010 emergency room reports show negative straight leg raise

3   testing (Tr. 649).  The ALJ's inaccurate citation is of no consequence to the ultimate non-

4   disability determination in this case.  *See Molina v. Astrue*, 674 F.3d at 1117-22.

5          Second, plaintiff takes out of context the ALJ's characterization of the progression

6   of her symptoms.  Plaintiff argues that the "ALJ also notes that there is no evidence of a

7   worsening of [plaintiff's] condition, but this finding is inaccurate."  Dkt. No. 12, p. 7

8   (*citing* Tr. 32-33).   However, the ALJ decision reads: "Medical evidence documented *at*

9   *around the time of the alleged onset date* of disability does not show worsening of

10  symptoms (Tr. 32)(emphasis added)."  Plaintiff's alleged disability onset date is May 25,

11  2010 (Tr. 25, 157).  In support of plaintiff's argument that her knee symptoms worsened,

12  plaintiff points, however, to medical findings from May 2011, approximately one year

13  after her alleged disability onset date.  This evidence is not in conflict with the ALJ's

14  observation that the medical records around the time of plaintiff's alleged disability onset

15  did not correspond to a worsening of plaintiff's condition. For these reasons, the ALJ's

16  step-three determination is affirmed.

17         (3)      Did the Commissioner err in determining that plaintiff had a residual
18                  functional capacity to perform light level work?

19         Plaintiff also argues that the ALJ erred in determining plaintiff's residual

20  functional capacity ("RFC").  Dkt. No. 12 p. 8-9.  Plaintiff bases this argument on the

21  assignments of error addressed previously in this decision.  In making this argument,

22  plaintiff identifies no additional functional limitations that the ALJ failed to address in

the RFC finding.  For this reason, and because this Court has already determined that the

ALJ did not err in finding plaintiff's diabetes not severe or in finding that the severity of

plaintiff's impairments did not meet or medically equal the severity of a listed

impairment, this Court also affirms the ALJ's RFC finding.

(4)     Did the Commissioner err in determining plaintiff's credibility?

Plaintiff next argues that the ALJ erred in finding plaintiff's testimony not

credible.  Dkt. No. 12, p. 9.  Specifically, plaintiff argues that the ALJ's negative

credibility finding was based, at least in part, on an inaccurate assessment of the medical

evidence related to straight leg raise testing, and the progression of plaintiff's knee

impairment, which already has been addressed in this decision.

Questions of credibility are solely within the control of the ALJ.  *Sample v.*

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this

credibility determination.  *Allen  v. Heckler*, 749 F.2d 577,  580 (9th Cir. 1984).  In

addition, the Court may not reverse a credibility determination where that determination

is based on contradictory or ambiguous evidence.  *Id.* at 579.  Absent affirmative

evidence that the claimant is malingering, the ALJ must provide specific "clear and

convincing" reasons for rejecting the claimant's testimony.  *Smolen,* 80 F.3d at 1283-84

(*citing Dodrill v. Shalala*, 12 F.3d 915, 917 (9th Cir. 1993)); *Reddick v. Chater*, 157 F.3d

715, 722 (9th Cir. 1998) (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996);

*Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

As discussed previously, plaintiff has identified no meaningful error in the ALJ's

assessment of the medical evidence related to plaintiff's straight leg raise testing and

knee condition.  Even if the ALJ's assessment of this evidence were flawed, the ALJ

offered legally sufficient reasons to reject plaintiff's testimony.  *See Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (that some of the reasons for discrediting a

claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence).

For example, the ALJ observed that plaintiff has a history of multiple felony

convictions for crimes of dishonesty, including identity theft, forgery, and second degree

theft (Tr. 34 (*citing* 52, 752).  In determining a claimant's credibility, the ALJ may

consider "ordinary techniques of credibility evaluation," *Smolen*, 80 F.3d at 1284.   The

ALJ also pointed out the plaintiff's poor work history undermined the credibility of her

allegations (Tr. 34).  *Id*. (ALJ may also consider a claimant's work history); *see* Tr. 170-

72 (lifetime earning history of less than $4,000.00).  For these reasons, the ALJ's

credibility determination is affirmed.

(5)     Did the Commissioner err in not giving proper weight to the medical
        evidence?

Plaintiff next argues that the ALJ erred in her assessment of the medical evidence

of treating chiropractor Gordon Rody, DC.  Dkt. No. 12, p. 9.  Specifically, plaintiff

argues that the ALJ failed to give legally sufficient reasons to reject the opinion of

chiropractor Rody that plaintiff "cannot be required to be in one position for very long

such as sitting, standing, squatting, or twisting (Tr. 714)."  The ALJ rejected this opinion

because it "is not specific enough to be of particular probative value to a function-by-

function determination" of plaintiff's RFC (Tr. 35).  *See* SSR 96-8p, 1996 WL 374184*1

1    (RFC must assess work-related abilities on a function-by-function basis).  Plaintiff further

2    argues that chiropractor Rody's opinion regarding plaintiff's ability to be in one position

3    should be read in context of chiropractor Rody's opinion that plaintiff is "100% disabled

4    for most jobs and activities (Tr. 714)".

5         Chiropractors are considered "other medical sources."  *See* 20 C.F.R. § 416.913

6    (d); *See also Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-24 (9th Cir. 2010)

7    (*citing* 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939).  "[O]nly

8    'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable

9    medical sources' can be considered treating sources." *See* SSR 06-03p, 2006 WL

10   2329939 *2 (internal citations omitted). Nevertheless, evidence from "other medical"

11   sources, that is, lay evidence, can demonstrate "the severity of the individual's

12   impairment(s) and how it affects the individual's ability to function." *Id.*  An ALJ may

13   disregard opinion evidence provided by an other medical source, "if the ALJ 'gives

14   reasons germane to each witness for doing so." *Turner,* 613 F.3d at 1224 (*quoting Lewis

15   v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d

16   1462, 1467 (9th Cir. 1996).

17        Here, the ALJ provided a germane reason for rejecting chiropractor Rody's

18   opinion that plaintiff could not remain in one position for very long. *See Turner,* 613

19   F.3d at 1224.  As noted by the ALJ, chiropractor Rody's opinion was not sufficiently

20   specific to be included in an RFC finding, which is to be expressed on a function-by-

21   function basis in terms of the most a claimant can do. *See* SSR 96-8p, 1996 WL 1996

1  WL 374184*1 (RFC must assess work-related abilities on a function-by-function basis,

2  RFC represents the most an individual can do despite her limitations or restriction).

3          Plaintiff also argues that this limitation should be considered in the context of

4  chiropractor Rody's statement that plaintiff is "100% disabled for most jobs and activities

5  (Tr. 714)".  However, the ALJ properly rejected the conclusion that plaintiff was 100%

6  disabled by noting that a determination of whether or not a claimant is disabled is

7  reserved to the Commissioner (Tr. 35 (*citing* SSR 96-5p, 1996 WL 374183)).  *See* 20

8  C.F.R. § 416.912(b)(7); *see also Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)

9  (ALJ not bound by medical opinions on ultimate issue of disability).  Additionally, this

10  Court notes that chiropractor Rody's opinion that plaintiff was 100% disabled "for *most*

11  jobs and activities" was offered at the same time plaintiff reported to chiropractor Rody

12  that she was working full time as a Mary Kay consultant (*see* Tr. 713-14)(emphasis

13  added).  It appears that chiropractor Rody's definition of "most" jobs and activities did

14  not include those jobs and activities associated with working as a Mary Kay consultant.

15          Moreover, plaintiff has not established she was harmed by the ALJ's failure to

16  adopt this opinion.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The

17  burden is on the party claiming error to demonstrate not only the error, but also that it

18  affected his "substantial rights," which is to say, not merely his procedural rights.")

19  (*citing Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).  Plaintiff offers no argument,

20  nor is it clear from the record, that the exertional limitations opined by chiropractor Rody

21  could not be accommodated by the usual breaks provided in a competitive work setting.

22  *See* SSR 96-9p, 1996 WL 374185*6 (the performance of a full range of sedentary work

activities requires the ability "to remain in a seated position for approximately 6 hours of an 8-hour work day, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").  For these reasons, the ALJ's assessment of chiropractor Rody's opinion is affirmed.

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Dated this 22nd day of August, 2014.

J. Richard Creatura
United States Magistrate Judge